May it please the Court, my name is Anita Wu of Latham & Watkins, and I represent the appellant in this case, Michael Delongis. With me today at Council's table is Wayne Flick from my office. With the Court's permission, I'll reserve two minutes for rebuttal. Your Honors, the only issue in dispute at my client's trial was whether he had the mental state necessary for a murder conviction. Central to the theory of defense was that Mr. Delongis lacked the mental state required to convict him of murder, because one, he was suffering from certain mental disorders, including alcohol dependence, and two, he was heavily intoxicated at the time that he killed his wife. Based on the evidence at trial, the prosecutor, the defense counsel, and the trial judge all agreed that the jury should be instructed to consider that evidence in deciding if he had the necessary mental state. Well, let me ask you this. I was a California judge and a California prosecutor and defense lawyer as well. So basically, he was given, there was first-degree murder instructions given, second-degree murder instructions, voluntary manslaughter, and involuntary, correct? Correct. So all of the elements, there's no dispute that the jury was informed of all of those elements, of each of those crimes, and that they were entitled to look to lesser included. Then he did put on evidence of his alcohol use. He put on evidence of his mental problems, as it were. So it's not a question of the jury didn't have all that evidence. So you're basically focusing on what I would call pinpoint instructions that you say that you didn't get. Number one, California law says that a judge only has to give certain, you have to give the elements of the crime. They did give the lesser included. So that's not really in dispute. But on the pinpoint, you have to give them if substantial evidence supports that. And the court of the last recent decision here said that there wasn't substantial evidence to support the giving of those. So you have, you got that level, but then you have the Edper review as well. So I'm wondering, what's your best Federal case that says that he was entitled to pinpoint instructions? I can't find anything on that that's clearly established Federal law. Your Honor, if I may separate the two instructional errors, because I think the California court of appeals decision addressed only the evidence, whether the evidence was sufficient to support an intoxication instruction, and the issue as to the mental disorder instruction was slightly different. There, the defective instruction arguably led a reasonable juror to conclude that it could not consider evidence of a mental disorder for purposes of determining whether the mental state existed for second degree murder. But he argued, my recollection is that his whole argument that was he was in like kind of a rage. He was arguing really for the voluntary manslaughter. He said the argument in the case was, yeah, he killed her, but he, it was in a rage, and that's, they were going for voluntary. Is that correct? They were going for voluntary manslaughter based on a theory that he lacked the mental state. There was a heat of passion argument based on provocation, and there also was a defense theory that because of the mental state, because of the mental disorder, he didn't form the actual specific intent that was required. But he's going on, but it's that he was in a rage, right? It wasn't, isn't that, wasn't that, if you look at the closing arguments? The rage was a part of it. The expert testimony was that someone suffering from the personality disorders and the alcohol dependence was likely to be subject to a rage reaction given the circumstances. And also there was expert testimony about the effect of the alcohol. The expert said about the alcohol it was a disinhibitor. I think that was the exact words. And a disinhibitor to me means that if he wanted to kill his wife and he was otherwise inhibited from doing so because of a variety of reasons. If he were drunk, he would be less inhibited and he might kill her. I don't understand what that had to do with the forming an intent. It was the disinhibitor part. And there was also expert testimony about the effect on the brain's ability to make decisions, cognition, comprehension. Yeah, but those are all mumbo-jumbo when he, what I call psychobabble. When it came down to the issue is that you want the judge to charge the jury, that you've heard evidence of intoxication and you can consider that in determining his intent. Now, what evidence is there that the intoxication had anything to do with his intent? On the intoxication, again, it's a separate issue of the mental disorder. But on the intoxication, there was substantial evidence that his intoxication at the time actually affected his ability to form the, his actual formation of the intent. Well, and the jury understood that. The jury didn't find him guilty of first-degree murder. Correct. And I can tell you if this were a sufficiency of the evidence on first-degree, if he had been convicted of first-degree murder and we were talking sufficiency, there was evidence that he, that from, if you look at how it happened, that there was the, her head beaten and all of those injuries were pre-strangulation. If you were challenging the sufficiency of a first-degree conviction, there is evidence of first-degree. But obviously, the jury was looking and said, okay, well, whatever was going on with him, we're not going to say that he premeditated and, you know, but we still think that he had malice. In fact, the jury's verdict suggested that they accepted the testimony of the expert who said when he was asked to, in plain English, to find the difference between what a rage reaction was, he said, well, if he wanted to kill his wife and then he went out and took a walk and he walked for an hour and he came back and he killed her, well, that clearly shows deliberation and premeditation. But if the rage reaction would be that he formed an instantaneous desire to kill her, but I don't see how that in any way supports the fact that he couldn't have formed the intent. And the California court, applying California law, which is what you're relying on for your pinpoint construction argument, said, well, he just didn't come forward with enough evidence to justify this instruction. It seems to me that's the end of the ballgame on that issue. On the issue of the sufficiency of the- On intoxication. Yeah, they said he just didn't come forward. He never even testified at the trial that the reason he did it was because he was intoxicated. He even lied to the police about how she fell down the steps when the police came when he was allegedly so intoxicated that he couldn't form an intent. In other words, he understood, he had consciousness of guilt when the police showed up pursuant to his, quote, delayed call to 911. So how do we say that on an issue of State law in which the California court of appeal said there was not a substantial enough showing to justify this charge, how do we under AETPA say otherwise? On the intoxication defense, Your Honor, it would have to be that the State court of appeal's determination was an unreasonable determination of the facts based on the records showing that Mr. DeLongis testified that as the homicide was occurring, he had tunnel vision, couldn't hear, couldn't see, was dizzy, felt like he wasn't there. Immediately after, he didn't know what was going on. He wasn't sure what had happened. In the secretly recorded conversation right after, it clearly showed he was impaired and disoriented. But what's your best Federal case under the AEDPA review that, you know, you're talking about a pinpoint instruction or I guess you're alleging what, I guess what you have to try to allege is a separate defense theory. But what's your best case? Under the mental disorder instruction, I'd point to. What's your best U.S. Supreme Court case? On mental disorder, I would say. On mental disorder, you're talking about intoxication. You get stuck, you know, you've not been asked this question twice and you keep stalling. We're talking about intoxication. Judge Callahan has asked you twice for your best case or three times. Now, the next thing I want to hear from you is your best case. Matthews, Your Honor. Supreme Court case. Supreme Court case in Matthews. Very general. I mean, the Supreme Court has told us that for AEDPA purposes, you have to be, the Supreme Court law established has to be at a very specific level. You can't have it on a high level of generality. All that Matthews says is that you are entitled to an instruction if it's justified by your facts. That's right, Your Honor. I think the Supreme Court has, however, made clear that AEDPA's clearly established Federal law requirement doesn't demand more than a principle at that level of generality. It doesn't require a nearly identical. You have the question, then, of how much evidence is enough to justify an instruction on the Matthews? Whether it's a little bit of evidence, and there is a difference between the Federal standard and the California standard. Is there a Supreme Court case that sets the Federal standard for that? Excuse me? Is there a Supreme Court case that sets the Federal standard? I think the standard to apply would be the state standard of some foundation in evidence, substantial evidence. And I think in Bradley, this Court applied the Matthews and Trebetta clearly established Federal law that you're entitled to an instruction on your defense. So your view is that the state court applied the right standard, but just got it wrong as a matter of fact? Correct. It was an unreasonable determination of the facts for the intoxication instruction. Okay. Can I ask you, Matthews was not a constitutional holding of the Supreme Court, was it? They were simply applying their supervisory powers to fill in gaps in Federal procedure. Matthews was a direct appeal. Am I wrong? It was a Federal case. The Ninth Circuit has read Matthews and Trebetta to mean that a criminal defendant is constitutionally entitled to adequate instructions on the defense theory of the case. In Bradley v. Duncan, it said that the trial court's failure to instruct on the entrapment theory violated Federal due process by preventing the defendant from meaningfully presenting the defense. And it relied on a Supreme Court case that did not involve a constitutional holding. Several other Ninth Circuit cases. But Matthews was not based on the Constitution is what he's saying. I think that it was, Your Honor. It was? Did they say so? They didn't specifically cite the Constitution, but this Court has repeatedly understood Matthews to be establishing a constitutional principle, and under AEDPA review, that this Court follows what it has held as clearly established Federal law established by the Supreme Court. You know, the Supreme Court has told us several times that what the Ninth Circuit says it is isn't the same as what the Supreme Court says it is. That's right. But I think there's a long line of cases establishing, including the Trombetta case, that a criminal defendant is constitutionally entitled to instructions to meaningfully present a defense theory. Trombetta didn't even involve instructions, did it? What? Trombetta did not involve instructions at all. What Ninth Circuit case holds that for AEDPA purposes, Matthews was a constitutional decision? Bradley, the 2002 Ninth Circuit case, applied AEDPA and held that under Matthews and Trombetta, the failure to instruct on entrapment violated Federal due process. Can I ask? Bradley v. Duncan? Bradley v. Duncan. Can I ask you, the other half of the coin of the Court of Appeals holding is really if there wasn't substantial evidence sufficient to go to justify the charge, then it couldn't, there's not a reasonable probability that the failure to give the charge would affect the verdict. In other words, it could just as easily, the Ninth Circuit, the Court of Appeal, California Court of Appeals reasoning could just as easily justify a harmless error determination as well as its own determination that under State law, this just isn't enough evidence to warrant the instruction. This Court looks independently at the Brecht harmless error test, and the State bears the risk of doubt, has to show that there's a fair assurance that the jury would have reached the same verdict absent the error. I think there's a reasonable probability that the verdict would have been different.  And here, Your Honor, the sole issue in dispute was my client's state of mind. And with the combination of the defective mental disorder instruction telling the jury effectively that it couldn't consider the evidence of the mental disorder except for purposes of first-degree murder, and the absence of the court. Don't you have the same, as I read the record, you have the same problem. First of all, the reason the California Court of Appeal didn't reach it was because it wasn't raised. In fact, it was raised, the mental disorder claim was raised for the first time in a habeas corpus proceeding that was filed in the Supreme Court of California. So my reading of the record doesn't show that there's sufficient evidence to indicate that whatever mental disorder he had affected his ability to form an intent. In fact, defense counsel barely mentioned it, if he mentioned it at all in his closing argument. What he mentioned was what he referred to as alcoholism. I don't see, you say he relied on it from beginning to end, but yeah, in beginning during jury selection and during sentencing. But I don't see where defense counsel, even in his summation, relied on mental disorder. Don't forget, the judge, as Judge Callahan indicated, he charged the elements of the evidence that came in. He didn't limit any argument that could have been made. He just didn't give this pinpoint instruction. And I don't see where free to argue what the evidence showed and mental intent, specific intent, being an issue, even in the manner in which the judge charged, that he ever even alluded to it in any significant or meaningful way. It all came down whether you, however you slice it, to this rage reaction. Well, in order for the rage reaction to have any, to make any sense, it would need to be tied to a mental disorder theory, not a heat of passion instruction, which is what was given. Your Honor asked about whether or not it was addressed in the closing argument, the alcoholism and the mental disorder, and it absolutely was. Throughout the closing argument, for example, at page 1574 of the record, defense counsel says, how could anyone not be affected by that kind of alcohol in your system on a constant basis? That's the alcoholism. I thought we're dealing, if you're conflating his intoxication with mental disorder, I can understand that. But where there was no, he defended himself, never said he was, the reason he did this was because he was drunk. He even lied, as I said, he lied, he was sober enough to understand that he should lie to the police about how this even happened. And nowhere does, there was no evidence that the psychiatrist, I believe the psychiatrist didn't say that someone with his level of intoxication, whatever it was, 1921, a person like that would have difficulty forming an intent to kill. So there's really this, what I see happen here is a lot of evidence came in on alcoholism, the judge on mental disorder. I don't see any evidence linking it to his ability to form an intent. Instead, it was directed to the premeditation issue and a desire to get a verdict of manslaughter, which is what, if you could say that, which is what, in effect, he pleaded guilty to in front of the jury. The expert testimony went as far as it could under California law. No, California law would have prohibited him from saying, in my opinion, Mr. DeLongis was so intoxicated that he couldn't form an intent. That's what California law would have prohibited. It wouldn't have prohibited, as I understand it, him from testifying that a person who had this alcohol level, let's say it was .21, could be incapable of forming an intent. In fact, Mr. Alvarez was, I think, permitted to testify that a person with his mental disorder could possibly have been motivated by this rage reaction. So California law didn't prohibit him from saying that a person with a 2.1 would have difficulty forming an intent. He didn't say that. And it seems to me that the California, how do we second-guess on the California Supreme Court court of appeals decision, that there just wasn't enough evidence to warrant an instruction that was required by State law. I don't see how we second-guess it. The experts, Your Honor, did testify that Mr. DeLongis did not, or a person in, with the condition that Mr. DeLongis had, would not have been able to appreciate the risks of their actions, the effect of the mental state as opposed to the actual effect on Mr. DeLongis. I'd submit that the experts went as far as they could. On the question of the mental disorder. So you're saying that the expert would have been prohibited under California law from saying that someone with a 2.1 or .21 level of alcohol in his blood, that level could have affected that person's, could have affected that person's ability to form an intent. You say that's not admissible. That would not have been admissible under California law, which said, as I read it, that he couldn't say DeLongis, he couldn't give an opinion that said DeLongis was unable to form an intent. Right. And what the experts testified was that a person with a .21 or .2, this is Ms. Imobersteg's testimony, would have had an impaired ability to cognitively appreciate the risks of their actions, to consciously make decisions. Okay. Thank you. We'll hear from the Governor. Good morning. May it please the Court. One distinction I'd like to point out here, and this goes to both claims, is a distinction that DeLongis is seeking to blur, and that is Hita Passion was the chief defense here. Mental disorder and voluntary intoxication were feeders, if you will, for that. Did DeLongis ever argue to the jury that his alleged mental disorder precluded him from forming malice? No. Never argued that and never argued. There was one statement, one sentence on intoxication, but I think as the district court pointed out, that appeared to be more directed towards arguing that intoxication negated his ability to premeditate, which was the first degree count. The chief defense was Hita Passion, which was fully instructed on. The jury was instructed on the existence of the definition of voluntary intoxication. The jury even got involuntary manslaughter, right? I beg your pardon? The jury even got involuntary manslaughter, right? I believe they did. Yeah, which would be even lesser of that. It's harder to argue if the judge doesn't give an instruction. I mean, the judge gives an instruction that to the effect that intoxication negates state of mind, then the lawyer could argue. So the fact that he didn't argue it, maybe that's a consequence of the failure to give an instruction. Could be, right? Well, Your Honor, as I said in my brief, the argument of counsel happened before the instructions were read. The discussion about the instructions and the agreement to give it was made before argument. I see. Then there was counsel's argument. So my position is that his argument wasn't driven by the absence of an instruction, because on the record, it appears that the instruction would be given. That's correct. As far as the record reflects, he believed that instruction was going to be given so that it didn't drive. Well, does it matter whether it's a legal defense that he's denied an instruction on as opposed to a pinpoint instruction? Well, I think it does for purposes of AEDFA. And if we're going to talk about Matthews, for example, if arguendo we say Matthews is constitutionally driven, there's a significant distinction with that case, and that is that it involved an affirmative defense, which is very different from what we have here. Well, we have held this. I mean, in the case that opposing counsel cites, we did hold that it is constitutionally driven, right? This was Bradley. Bradley. Bradley, right? That's correct. That was an AEDFA case, and we did read Duncan. I'm sorry. We did read Matthews as being constitutionally driven under AEDFA. So that's law of the circuit. We're bound by that. You did. I don't remember if Bradley was en banc, but there is another case, Bueno v. Hallahan, which I cite in my brief, which I believe in that case this Court said, no, that wasn't en banc, that it wasn't constitutionally driven, that Matthews wasn't. And I do acknowledge that this Court has said that Matthews is constitutionally driven. Like I say, I don't recall if Bradley was en banc or if this Court has said in an en banc decision. But I do acknowledge that the Court has said that. Our position is otherwise. I wasn't going to belabor it because I know this Court has held to the contrary. Nevertheless, many courts, State and Federal, have held the opposing position, which is that it's not constitutionally driven. And just that divide alone reflects that it's not clearly established. But didn't Matthews, correct me if I'm wrong, that involved the complete failure to charge an affirmative defense? That's right. It wasn't. A theory of the defense is a little bit different than the failure to charge an affirmative defense, although I think that's not constitutionally required. But that's a separate story. Isn't there a difference? That's correct, Your Honor. But not a difference that matters for our case because if the issue is whether Matthews is or is not a constitutional decision, that's an arguable point. And we've held that it's a constitutional decision. Then it's a constitutional decision. How widely it applies is a different question. That's correct, with the caveat, though, that one other panel has said that. But go ahead, Your Honor. Yes. Well, if there's a conflict, then we have no choice but to go in bank to resolve the conflict, if it matters in this case. If we have conflicting panel decisions, we can't resolve them. But if we do assume, let's say we assume for argument that it is constitutionally driven, your point, Judge Corman, is correct, that there's a significant distinction, and that distinction, any significant distinction with a Supreme Court decision is not constitutionally established. There is a line, but I think that this is well beyond it. There's a big difference between affirmative defense where a defendant, at least in California, has the burden of proving the defense, and here, which is under state law, pinpoint instruction. The offenses and the chief defense, if you will, of heat of passion, were fully instructed on. The voluntary intoxication and mental disorder were subsidiary claims. They fed into heat of passion. But voluntary intoxication is not a defense to a crime, correct? It is not. It's Section 20. It can be considered for mental state, but it's not a defense to a crime. No. That's correct. And there's a point I wanted to clarify on that. In the reply brief, DeLonga states that voluntary intoxication can negate implied malice, because I had argued on harmless error that, well, we still have implied malice, and voluntary intoxication didn't relate to that. The State court did, much to my surprise, say that in a general statement of the law. But I think if you look at the cases they cite, which the cases that are cited there in the opinion make it clear that it's not. That was a misstatement. And Penal Code Section 22 says voluntary intoxication cannot negate implied malice, only express malice. And if we put everything else aside, there is no way Mr. DeLonga's is getting around implied malice. Voluntary intoxication is out of the picture. And I would like to point out that voluntary intoxication is also out of the picture on the mental disorder claim. A mental disorder can negate implied malice, but you have to take voluntary intoxication out of that picture. So unless one of his other disorders, agoraphobia, or just intoxication nominally, or alcoholism nominally, could have negated, that's the argument he had. In terms of the ---- Well, what sort of deference is the State holding entitled to regarding whether there was substantial evidence to require the giving of certain instructions? This Court has stated in an opinion I can't recall, but I cite in my brief, that that is a factual finding, that a State court's finding that there is, whether there is sufficient evidence to support an instruction is a finding of fact entitled to, that is presumed correct, under 2254e or d.2. So that is the deference that's required according to the State. Is it really a finding of fact as much as it is an evaluation of the evidence? I beg your pardon? Is it really a finding of fact? Essentially, they're saying, we look at this evidence and it's not enough under California law. I mean, there's a case, I don't know whether you cited in your brief, Mendez v. Terhune in 422f3-1012, which involved the failure to give a so-called imperfect defense instruction, in which the California Court of Appeals said that the judge's failure to do so was not error because the defense presented insufficient evidence under California law to warrant the instruction. And we said that that holding resulted from an interpretation of State law. Any error in the State court's determination whether State law allowed for an instruction in this case cannot form the basis for habeas corpus relief. And it went on to observe that a State court's finding that the evidence does not support a claim of imperfect self-defense is entitled to a presumption of correctness on Federal habeas review. I mean, isn't that the end of this case? Well, it is. It's one of several ends, Your Honor. And I did say that in my brief, that that under that case, the factual finding is presumed correct, and to the extent it was a legal finding, it's binding. Okay. Thank you. If the Court has no further questions, I'll submit it. Thank you. Okay. Cases are used and submitted.
judges: Korman, Kozinski, Callahan